IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00035-CR

 

Raul Rios,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2005-438-C

 



Opinion



 








            Raul Rios appeals his conviction for
aggravated kidnapping, challenging: (1) the admission of a prior conviction
(two points); (2) the admission of letters from the victim; and (3) the legal and
factual sufficiency of the evidence (two points).  We affirm.

LEGAL AND FACTUAL SUFFICIENCY

We begin with Rios’s fourth and fifth points in
which he contends that the evidence is legally and factually insufficient to
sustain his aggravated kidnapping conviction.

Applicable Law

Under legal sufficiency review, we determine whether, after
viewing all the evidence in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Curry
v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing Jackson
v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). 
We do not resolve any conflict of fact or assign credibility to the witnesses,
as this was the function of the trier of fact.  See Dewberry
v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Adelman
v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson
v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991).  Inconsistencies in the
evidence are resolved in favor of the verdict.  Curry, 30 S.W.3d at 406; Matson, 819 S.W.2d at 843.

Under factual sufficiency review, we ask whether a
neutral review of all the evidence, though legally sufficient, demonstrates
that the proof of guilt is so weak or that conflicting evidence is so strong as
to render the jury's verdict clearly wrong and manifestly unjust.  Watson
v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Johnson
v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  We review the evidence weighed
by the jury that tends to prove the existence of the elemental fact in
dispute and compare it with the evidence that tends to disprove that fact.  Johnson, 23 S.W.3d at 7.  We
do not indulge in inferences or confine our view to evidence favoring one side.
Rather, we look at all the evidence on both sides and then make a predominantly
intuitive judgment.  Id.

            A person commits aggravated kidnapping if he
intentionally or knowingly abducts
another person and uses or exhibits a deadly weapon during the commission of the offense.  Hines v. State, 75 S.W.3d 444, 446 (Tex.
Crim. App. 2002) (citing Tex. Pen. Code Ann. § 20.04(b) (Vernon 2003)).  “Abduct” means to
restrain a person with intent to prevent his liberation by secreting or
holding him in a place where he is not likely to be found; or using or
threatening to use deadly force.  Tex. Pen. Code Ann. § 20.01(2) (Vernon Supp. 2006).  “Restrain”
means to restrict a person’s movements without consent, so as to interfere
substantially with the person's liberty, by moving the person from one place to
another or by confining the person.  Tex. Pen. Code Ann.  § 20.01(1) (Vernon Supp. 2006).  Restraint
is without consent if accomplished by force, intimidation, or deception.  Tex. Pen. Code Ann.  § 20.01(1)(A)
(Vernon Supp. 2006).

Factual Background

            Rios and Ginger Lopez were in a
relationship that ended prior to the offense.  Lopez’s husband was
incarcerated.  On the day of the offense, while at her cousin’s home, Lopez and
Juan Cabriales were listening to music in Lopez’s car when Carbriales observed
Rios approach the vehicle.  Rios entered the vehicle and accused Lopez of
having a relationship with Cabriales.  Cabriales exited the vehicle.  Lopez
could not exit the vehicle because the driver door did not open from the
inside.

Rios moved to the passenger seat, placed a pair of
scissors against Lopez’s neck, and threatened to kill her.  Rios held the
scissors against Lopez’s neck while she drove.  At one point, Lopez stopped the
car in the middle of traffic to defend herself.  When Rios later became
distracted, Lopez drove to a police station and honked the horn.  Rios hit the
gas pedal and stated that, “if he went to jail, he was going to go for
something major, not for beating [Lopez] up.”  He refused Lopez’s requests to
either exit the vehicle or allow Lopez to exit the vehicle.

Rios ordered Lopez to drive to his sister’s home
and park behind the home.  He pocketed Lopez’s car keys.  Rios began choking
Lopez.  Lopez blacked out, but awoke to Rios sprinkling water on her face. 
Lopez tried to escape, but was caught by Rios  who stated that Lopez “was not
going nowhere until he was finished with [her].”  He forced Lopez to undress
and engaged in sexual activity with her.  

            A man approached the vehicle looking
for “Gina.”  Lopez asked for help.  The man told Rios to get off Lopez and
walked away.  Rios told Lopez to get dressed, placed the scissors against her
back, and ordered her inside the home.  “Gina” exited as Rios and Lopez entered
the home.  Rios told Lopez to wash her hands and face.  He forced Lopez to call
Cabriales to ask whether Lopez had sex with Cabriales.  Rios refused to allow
Lopez to leave and continued pressing the scissors against her back.      

Sarah Tenorio and her boyfriend subsequently
arrived at the home.[1]  Lopez
would not respond to Tenorio.  Rios’s hand remained behind Lopez’s back and he
refused to return Lopez’s car keys.  Rios eventually allowed Tenorio to take
Lopez to the restroom, after which Tenorio was able to remove Lopez from the home.

After his arrest, Rios contacted Lopez and told
her that he had been under the influence of drugs and alcohol and could not
recall what happened.[2]  Lopez
visited Rios in jail on more than one occasion and also met with his attorney. 
Lopez told Rios’s attorney that Rios did not deserve to go to jail for life and
die in prison.  She denied stating that Rios should not be in jail or that he
would not hurt anyone and denied trying to drop the charges.  According to Rios’s
niece, Lopez had mentioned needing to find a way to get rid of Rios because her
husband Pedro was being released.  Rios’s sister-in-law testified that Lopez
was afraid of Pedro and would “rather see Roy [Rios] alive in jail than dead
out in the world.”  Pedro denied threatening Lopez or Rios, but admitted
telling Lopez that she must end the relationship if she wanted to keep the
family together.          

Analysis

Rios argues that the evidence is legally and
factually insufficient because: (1) he did not have the intent to prevent
Lopez’s liberation; (2) he did not secrete or hold Lopez in a place where she
was not likely to be found; (3) he eventually released Lopez; and (4) Lopez
provided inconsistent testimony.

First, Rios intended to prevent Lopez’s
liberation.  By placing scissors against Lopez’s neck and threatening to kill
her, Rios bound Lopez to follow his command.  He thwarted Lopez’s attempt to
seek help from the police.  He took possession of her car keys.  In doing so,
he used force and intimidation to restrain Lopez’s liberty without her consent
and exercised continuous “physical control” over her.  Hines,
75 S.W.3d at 448; see
Tex. Pen. Code Ann. § 20.01(1). 
This evidence indicates that Rios had intent to prevent Lopez’s liberation.  See Tex. Pen. Code Ann. § 20.01(2); see also Smith v. State, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998) (“Intent is a matter of fact, to be determined from
all of the circumstances”).

Second, Rios held Lopez in a place where she was
not likely to be found: “an automobile being driven on city streets.”  Sanders v. State, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980); see Tex. Pen. Code Ann. § 20.01(2).  “[T]hat the abduction
took place in public does not preclude a jury from concluding appellant
intended to secret or hold the victim in [a] place where she was not likely to
be found.”  Megas v. State, 68 S.W.3d 234, 241 (Tex. App.—Houston [1st
Dist.] 2002, pet. ref’d).

Third, Rios’s eventual decision to relinquish
control over Lopez does not negate the abduction element.  “[I]f the actor
intended at any time during the restraint to secrete or hold the victim in a place
where he is not likely to be found, the offense is complete.”  Price v. State, 35 S.W.3d 136, 140 (Tex. App.—Waco 2000, pet. ref’d) (citing Santellan
v. State, 939
S.W.2d 155, 162 (Tex. Crim. App. 1997)).  By the time Rios released
Lopez, the abduction had already taken place.

Fourth, the jury is the “sole judge of the weight
and credibility of witness testimony” and “may choose to believe all, some, or
none of it.”  Santellan, 939 S.W.2d at 164; Perez v.
State, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref’d).  The jury
was free to resolve any inconsistencies in Lopez’s testimony and was entitled
to do so in Lopez’s favor.

In summary, the evidence is legally and factually
sufficient to support the conviction.  We overrule points four and five.

PRIOR CONVICTION

            In Rios’s first and second points, he
contends that the evidence is legally insufficient to establish a prior aggravated
perjury conviction and the court abused its discretion by allowing the State to
introduce the conviction.  

            Texas courts have identified several non-exclusive
methods by which to prove a prior conviction.  See Flowers v. State, No. PD-1081-06, 2007 Tex. Crim. App. Lexis 428, at *7-9 (Tex. Crim. App. April 18, 2007); see also Smith v. State, 998 S.W.2d 683, 687 (Tex.
App.—Corpus Christi 1999, pet. ref’d).  One
method is by “documentary proof (such as a judgment) that contains sufficient
information to establish both the existence of a prior conviction and the defendant's identity
as the person convicted.”  Flowers, 2007 Tex. Crim. App. Lexis 428, at *7.  The State must present independent
evidence of identification.  See Beck v. State, 719
S.W.2d 205, 210 (Tex. Crim. App. 1986); see also Griffin v. State, 181
S.W.3d 818, 820 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d). 

Over Rios’s objection, the State introduced a
certified copy of a judgment reflecting a conviction for aggravated perjury to
support the habitual allegation in the indictment.  The judgment contained no
photographs or fingerprints establishing that Rios committed the offense.  Rios
argues that no independent evidence exists to show that he is the person
convicted in the perjury judgment.  The State argues that it provided
independent evidence via a certified penitentiary packet for another prior
conviction: delivery of a controlled substance.  The indictment in the pen
packet contained an enhancement paragraph for the perjury conviction.

Relying on Zimmer v. State, Rios responds
that “while they [the pen packet and the perjury judgment] probably involve the
same person, there is nothing to independently establish that [Rios] was the
person convicted of aggravated perjury.”  In Zimmer, the State attempted
to use a booking slip to establish a prior conviction.  See 989 S.W.2d 48, 50 (Tex. App.—San Antonio 1998,
pet. ref’d).  The slip
contained a fingerprint that matched Zimmer’s prints, but the judgment lacked
fingerprints or a signature.  See id.  The trial court excluded the slip, but admitted the judgment.  See
id.  The San Antonio Court found that, without the slip, no evidence established that Zimmer was the
same person convicted in the judgment.  See id at 52.  Even if admitted
into evidence, the slip showed only that the prints matched and the defendant
was arrested, not that the arrest resulted in the conviction.  See id.

Unlike the slip in Zimmer, the pen packet was
admitted into evidence and  establishes an actual conviction.  The packet
contained a photograph, fingerprints, the indictment, and the judgment. 
Detective Robert Fuller compared these fingerprints to Rios’s known
fingerprints and concluded that the two sets were the same.  Rios’s parole
officer, Judy Moss, identified Rios as the man depicted in the photograph.  The
indictment contained an enhancement paragraph for the perjury conviction and
listed Rios’s name, Rios’s alias “Roy Rios,” the cause number, the court, the convicting
county, and the date.  The judgment states that Rios pleaded “true” to the
enhancement and the jury found it to be “true.”  The information in the perjury
judgment mirrors that described by the documents in the pen packet.  Accordingly,
the packet establishes that Rios was previously convicted of delivery of a
controlled substance with a sentence enhanced by the prior aggravated perjury
conviction.

In light of this evidence, we cannot say that the State
failed to present independent evidence of identification or that the evidence
is legally insufficient to establish that Rios is the person previously
convicted.  See Beck, 719 S.W.2d at 210; see also Griffin, 181
S.W.3d at 820; see also Green v. State, 140 S.W.3d 776, 777-78 (Tex.
App.—Eastland 2004, no pet.).  The court did not abuse its discretion by
admitting the perjury judgment.  We
overrule Rios’s first and second points.

LETTERS FROM THE VICTIM

In Rios’s third point, he complains that the court
abused its discretion by admitting certain letters into evidence.

            We review a trial court's decision to
admit or exclude evidence
for abuse of discretion. 
See Martin
v. State, 173
S.W.3d 463, 467 (Tex. Crim. App. 2005); see also Shuffield
v. State, 189
S.W.3d 782, 793 (Tex. Crim. App.), cert. denied, 127 S. Ct.
664, 166 L. Ed. 2d 521 (2006) (citing Rachal
v. State, 917
S.W.2d 799, 816 (Tex. Crim. App. 1996)).  ”If the trial court’s
decision was within the bounds of reasonable disagreement, the appellate court
should not disturb its ruling.”  Shuffield, 189 S.W.3d at 793.

On cross-examination, Rios asked Lopez to identify
the dates on some letters she sent to Rios.  Lopez admitted sending the letters
to Rios while he was in jail.  Rios questioned Lopez about certain statements in the
letters, such as “sweetie,” “love,” and “Your Sweetie is thinking of you,” and
asked if the letters were “love notes.”  Lopez answered questions about a
letter addressing her attempt to visit Rios in jail and complaint that she was
not on his visitors list.  Rios introduced photos that Lopez sent with the
letters.  Over Rios’s objection, the court ordered the letters produced to the
State under the rule of optional completeness.  The State introduced redacted
versions of the letters into evidence and asked Lopez to read certain portions
of the letters.  On re-cross, the defense also asked Lopez to read portions of
the letters.      

 The rule of optional completeness provides that “when
part of an act, declaration, conversation, writing or recorded statement is
given in evidence by one party, the whole on the same subject may be inquired
into by the other.”  Tex. R. Evid. 107.  This rule “reduce[s] the possibility of
the jury receiving a false impression from hearing only a part of some act,
conversation, or writing.”  Credille
v. State, 925
S.W.2d 112, 116 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).  “[M]erely
referring to a statement or a quotation from it does not invoke the rule.”  Goldberg
v. State, 95
S.W.3d 345, 387 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d) (citing Jernigan v. State,
589 S.W.2d 681, 694-95 (Tex. Crim. App. 1979)).  Some portion of the
matter sought to be “completed” must have actually been introduced into
evidence.  See Washington
v. State, 856
S.W.2d 184, 186 (Tex. Crim. App. 1993).

In reliance on Grunsfeld v. State and Pinkney
v. State, Rios contends that he did not inquire into the contents of the
letters, introduce the letters into evidence, or read the letters into evidence. 
In Grunsfeld, after the defense questioned a police officer about
certain statements contained in his report, the State introduced the entire
report.  See 813 S.W.2d 158,
163 (Tex. App.—Dallas 1991), aff’d, 843
S.W.2d 521 (Tex. Crim. App. 1992).  In Pinkney, the defense asked a
witness about discrepancies in her written statement, and the State then introduced
the entire statement.  See 848
S.W.2d 363, 365-66 (Tex. App.—Houston [1st Dist.] 1993, no writ).  Merely using
these documents “for the purposes of
cross-examination did not invoke rule 107” and entitle the State to introduce
the entire document into evidence.  Grunsfeld, 813 S.W.2d at 163; see Pinkney, 848
S.W.2d at 367.

Here, Rios did not merely refer to the letters,
but raised the subject of the letters and inquired into specific portions of
their content.  See Sauceda v.
State, 129 S.W.3d 116, 122 (Tex. Crim. App. 2004); see also Wintters v.
State, 616 S.W.2d 197, 202 (Tex. Crim. App. 1981).  In doing so, he
entitled the State to introduce those
portions of the letters addressing the “same subject,” namely the
relationship between Rios and Lopez following the offense.  Wintters,
616 S.W.2d at 202 (emphasis added).  The State was not entitled to introduce
the letters in their entirety.  Thus, unlike in Grunsfeld
and Pinkney, the State introduced redacted versions of the letters.  Both
the defense and the State participated in deciding which portions to redact.  Accordingly,
both Grunsfeld and Pinkney are distinguishable.   

Taken
out of context, the letters could mislead the jury and leave a false impression
as to the subsequent relationship between the parties, the magnitude of the
allegations, and the affect of the offense on Lopez.  This is particularly true
in light of Rios’s question: “And you
sent him all this stuff after you’re saying he’s done all these unbelievably
despicable things to you; is that correct?”  By creating false implications, Rios invited a reply from the State
to fully explain the context of the letters.  See Credille,
925 S.W.2d at 116 (citing Parr v.
State, 557
S.W.2d 99, 102 (Tex. Crim. App. 1977)); see also Tovar v. State, No. 01-04-00867-CR, 2006 Tex. App. Lexis 6440, at *16 (Tex.
App.—Houston [1st Dist.] Jul. 20, 2006, no pet.); Bell v. State, 867 S.W.2d
958, 962 (Tex. App.—Waco 1994, no pet).  Moreover, hearsay is admissible “when it goes to clarify
other hearsay evidence elicited by the opposition.”  Bunton
v. State, 136
S.W.3d 355, 367 (Tex. App.—Austin 2004, pet. ref'd).

Therefore, the court’s decision to admit the
letters was at least within the bounds of reasonable disagreement.  See Credille, 925 S.W.2d at 116; see
also Shuffield, 189 S.W.3d at 793.  We
overrule Rios’s third point.    

Having overruled Rios’s five points of error, we
affirm the trial court’s judgment.

             

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed June 27, 2007

Publish

[CR25]









[1]
              Earlier, Tenorio had been
leaving the home when she observed Lopez’s car.  She saw feet dangling outside
the car and presumed Lopez was engaged in sexual activity.

 





[2]               Officer Lester Padgett testified
that Rios did not appear to be intoxicated at the time of his arrest.