Sam GRIFFIN, a.k.a. Sam
Gross, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–04–00822–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 8, 2005.

Nicole Wignall DeBorde, Houston, for appellant.

Peyton Peebles, III, Alan Curry, Houston, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Sam Griffin, was convicted of the felony offense of bail jumping. A jury found true two enhancement paragraphs and sentenced him to the minimum time allowed, twenty-five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Appellant appeals, arguing three points of error: (1) certain evidence of prior convictions was improperly admitted; (2) the evidence was legally insufficient as to one of the enhancement paragraphs; and (3) the State violated appellant's Sixth Amendment right to counsel under the United States Constitution by improperly commenting on his failure to call a previously-hired attorney to testify at his trial. We affirm.

## Factual and Procedural Background

On October 6, 2003, appellant, Sam Griffin,[1] was scheduled to go to trial for failure to register as a sex offender. He arrived at court on time for that morning's session. At 11:55 a.m., following the State's voir dire, the court released everyone for lunch with the strict instruction that all were to return at 1:00 p.m. Appellant never returned. The court dismissed the panel, forfeited appellant's bond on the State's motion, and issued a capias warrant. According to appellant, he had a car accident while returning a car a friend lent him, and so was unable to return to the courthouse until approximately 2:00 p.m. However, appellant did not attempt to contact the judge and explain what happened. Instead, he simply left the courthouse and his whereabouts were unknown for weeks.

Appellant was released originally on $20,000 bond pending trial for failure to register. The bondsman attempted to locate appellant after he failed to return to court, but was unable to do so. After several weeks, the bondsman contracted with Crime Stoppers to offer a reward for information leading to appellant's arrest. The Houston Chronicle and local television news programs ran appellant's picture and information. One of appellant's co-workers identified appellant and gave information leading to appellant's arrest. Following that arrest, appellant was charged and convicted for felony bail jumping. He testified in his own defense, but did not offer any testimony from the attorney who represented him in the failure to register case—although appellant claims to have informed that attorney of the entire situation at the time—nor did appellant call the friend to testify who had allegedly lent the wrecked car. Moreover, neither appellant nor the State's investigator was able to produce a citation[2] or accident report corroborating appellant's statement.

The jury convicted appellant of felony bail jumping. During the punishment phase, the State had to prove two specific prior felony convictions because appellant pleaded "not true" to the two enhancement paragraphs. As proof, the State produced

---

1. Appellant goes by two names, "Sam Griffin" and "Sam Gross." For simplicity, we use only the name "Sam Griffin."

2. Appellant claimed at trial that he had received a citation at the accident scene for having no insurance.

penitentiary packets ("pen" packets) for both offenses along with judgments and sentences. However, the State was unable to locate any fingerprint cards in the pen packet from appellant's burglary conviction. The court admitted the pen packet over appellant's objection because there was other corroborating evidence—namely, a physical description of appellant, date of birth, name, and information relating to an identifying tattoo. Additionally, appellant admitted in the guilt/innocence phase of the trial that he was indeed convicted of the burglary charge.

Appellant timely filed notice of appeal. On appeal, he raises three points of error. Taking each in turn, we affirm.

## Analysis

### I. Admissibility of Evidence

■ In his first point of error, appellant challenges the admission of evidence relating to the previous burglary conviction. The prosecution offered the evidence—certified copies of judgments along with a pen packet—during the punishment phase to prove one of the enhancement paragraphs. We review the admission of evidence for abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991, op. on reh'g). So long as the court's decision was within the zone of reasonable disagreement, we will not disturb it on appeal. *Id.* Because we are reluctant to reverse an exercise of discretion, we will uphold it if there is any basis to sustain the court's ruling, even if not the basis upon which the court relied. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

Appellant argues the trial judge erred in admitting a pen packet and two judgments from a previous burglary conviction used to prove an enhancement paragraph. Appellant contends the admitted evidence was not sufficiently linked to him so, it was

irrelevant. Although appellant admits that there is no exclusive method for linking pen packets and judgments to a defendant, he essentially argues that the State did not offer independent evidence that appellant was the person convicted of that previous offense because it failed to offer fingerprint evidence. Because we disagree the State did not offer any independent evidence, we overrule appellant's first point of error.

■ The State may introduce authenticated copies of state prison records and certified copies of a judgment and sentence to show that a defendant committed another crime. *Beck v. State,* 719 S.W.2d 205, 210 (Tex.Crim.App.1986). However, they are not enough evidence on their own. *Id.; see also, Perez v. State,* 21 S.W.3d 628, 630 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (stating that the State must tie documents to defendant in order to make them relevant). The State must come forward with independent supporting evidence to prove the defendant is the person described in those documents. *Beck,* 719 S.W.2d at 210. Typically, the State will present fingerprints included in the pen packet, have a fingerprinting expert take fresh fingerprints from the defendant, and then conclude from comparison that the defendant on trial is the same person convicted of the previous offense. *Id.* Yet there is no exclusive method or type of evidence required. *Id.* at 209–10.

The supporting evidence need not precede the admission of a pen packet or judgment and sentence. *Id.* Thus, the evidence offered during the punishment phase and evidence admitted during the guilt/innocence phase of the trial can be considered by the jury. There was no objection to the admission of that evidence, and appellant does not contend on appeal that it was improperly before the jury.

While we address the legal sufficiency of the State's evidence below, discussion of

the independent evidence is necessary to our analysis here. The State introduced evidence of appellant's sex, color, height, date of birth, name, alias, eye color, hair color, and identifying tattoo.[3] In addition, the documents reflected the specific cause numbers for the previous actions—which are unique to each action—conviction dates, and the specific crime involved. Appellant, while testifying in the guilt/innocence phase, admitted to having the burglary conviction[4] listed in the challenged documents. Admissions in open court are sufficient for proving a prior conviction.[5] Beck, 719 S.W.2d at 210. Put together, the State tied the evidence to appellant and the trial court did not err in admitting this evidence and leaving it to the jury to determine if the State met its burden of proving true the enhancement paragraph. We overrule appellant's first point of error.

## II. Legal Sufficiency

In his second point of error, appellant argues the evidence was legally insufficient to prove the truth of the second enhancement paragraph—that he committed the burglary discussed above. In a legal sufficiency challenge, we employ the familiar standard of viewing the evidence in the light most favorable to the verdict. King v. State, 29 S.W.3d 556, 562 (Tex.Crim. App.2000). If any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, we will affirm. Id.

We have already listed the identifying characteristics the State proffered to prove appellant was convicted of the robbery as alleged in the enhancement paragraph. Appellant admitted to the conviction, and that admission was part of the evidence considered during the punishment phase. The pen packet and judgment and sentence, though not sufficient on their own, were corroborated with the identifying characteristics of appellant and his confession. Viewed in the light most favorable to the verdict, the evidence is sufficient. We overrule appellant's second point of error.

## III. Improper Commenting on Appellant's Attorney–Client Privilege

█ In his final point of error, appellant claims the prosecutor violated his Sixth

---

3. There was some discrepancy from one witness regarding the location of this tattoo. However, it is the jury's province to resolve those inconsistencies. Additionally, the witness did provide an explanation for why she may have indicated the tattoo is on appellant's right hand, whereas everyone else agreed it is on his left hand. Such arguments go to weight and credibility, not admissibility.

4. Appellant argues that there is a discrepancy between conviction dates because the enhancement paragraph alleges a burglary conviction entered on January 2, 1986, whereas other documents admitted to prove the enhancement place the conviction date at December 20, 1984, with a final conviction date of January 2, 1986. Appellant attempts to elevate form over substance. Appellant was convicted on December 20, 1984, and placed on probation. Probation was revoked and appellant was finally convicted on January 2, 1986. It is well settled that a probated sentence is not a final conviction for enhancement purposes unless revoked. Ex Parte Langley, 833 S.W.2d 141, 143 (Tex.Crim.App. 1992). Thus, the relevant conviction date is the date of revocation—the date on which there is a "final conviction." Here, that is January 2, 1986, and there is no discrepancy.

5. We recognize that the typical judicial admission in this context would be to plead "true" to the enhancement paragraph. However, appellant was under oath and admitted to having a final conviction for burglary on the date stated in the enhancement paragraph. This admission made in open court, under oath, and in front of the jury certainly qualifies as sufficient evidence to tie the conviction to appellant.

Amendment right to counsel by improperly commenting on his failure to call a previously-hired attorney to testify. Specifically, appellant contends the prosecutor improperly commented on appellant's invocation of his attorney-client privilege. Citing no direct authority, appellant argues these comments were constitutional violations of such a magnitude that they require us to reverse. The State rebuts that this point of error is waived because appellant's objection at trial was different than the point of error he raises on appeal. The State is correct that appellant clearly objected on a different ground than the one he urges on appeal. Because even constitutional violations may be waived, we agree that we must determine first if the point of error, though perhaps constitutional in nature, is waived.

We note initially that improper comments during jury argument generally can be waived, even if the error alleged is constitutional. *See, e.g., McLendon v. State,* 167 S.W.3d 503, 510 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (holding that a defendant may waive any objection to a prosecutor's improper comment on the right to remain silent). It is well established that "[a] party is not excused from the procedural requirements for objecting at trial merely because an error involves a constitutional right." *Jimenez v. State,* 32 S.W.3d 233, 235 (Tex.Crim.App.2000). A specific objection is required unless the constitutional right violated—if indeed violated—is (1) waivable only, or (2) an absolute, systemic requirement. *Saldano v. State,* 70 S.W.3d 873, 889 (Tex.Crim.App. 2002). Few rights fall into those two categories. *See id.* at 888 (listing rights that are waivable only as the right to counsel and trial by jury, and listing as absolute systemic requirements jurisdiction of the person, subject matter jurisdiction, and a penal statute's need for compliance with the Separation of Powers section of the state constitution). We turn now to appellant's argument to determine if it is the sort of waivable-only right or absolute systemic requirement that may be raised for the first time on appeal.

Appellant claims the following italicized language in the State's closing argument improperly commented on his invocation of the attorney-client privilege:

Ms. Gostyla: [The State] We also talked about investigators and how he had an investigator looking at the offense report that he swore existed. Don't think for a minute he couldn't have found John [the friend with whom defendant allegedly left the wrecked car].

*The defense also could have subpoenaed Lance Hamm, the defendant's attorney, and required him to come to court.*

Ms. Marshall: [defendant's attorney] Objection, Lance Hamm was subpoenaed to come to court. Arguing outside the scope of testimony.

The Court: Overruled.

Ms. Gostyla: *They could have required Lance Hamm to come to court and testify that the defendant was genuinely confused, or had a war* [sic] *wreck, or told him about a car wreck, or something like that. He's not hear* [sic] *to say anything about that.*

Appellant analogizes these comments to improper comments on a defendant's Fifth Amendment right to remain silent and thus argues there is a constitutional violation. In this case, appellant asks us to hold that commenting on the use of the attorney-client privilege—not using privileged communications—is a constitutional violation. Appellant has cited no authority, and we know of none, establishing that

comments on the use of the privilege, without more, amount to prejudicial use.[6] However we will assume, *arguendo*, that the prosecutor's comments were a constitutional violation solely to determine whether or not they may be raised for the first time on appeal.

 Because the complaints are similar in nature, we, as appellant does, draw an analogy from these comments to improper comments to the jury on a defendant's decision to invoke her Fifth Amendment right to remain silent. The rule against commenting on a defendant's invocation of her right to remain silent is well known. *See, e.g., Bustamante v. State,* 48 S.W.3d 761, 764 (Tex.Crim.App.2001). Neither the court nor the prosecutor may comment on that invocation. *Id.* However, though such comments are a constitutional violation, a defendant waives her right to complain on appeal if she fails to make a timely, specific objection to those comments. *See McLendon,* 167 S.W.3d at 510. In contrast with the absolute protection for the right to remain silent, the protection of privileged attorney-client communications is more limited. *See Murphy v. State,* 112 S.W.3d 592, 602–03 (Tex.Crim.App.2003) (requiring not only prosecutorial use of attorney-client privileged communications, but also prejudice to the defendant resulting from that use), *cert. denied,* 541 U.S. 940, 124 S.Ct. 1660, 158 L.Ed.2d 363 (2004). Indeed, we know of no case law stating that the mere reference to the privilege is a constitutional violation—only the use of those communications in limited circumstances. Certainly, given the more limited protection, the attorney-client privilege does not command greater respect or protection under the law than the Fifth Amendment right to remain silent.

 If a defendant may waive a complaint for improper commenting on her constitutional right to remain silent, it follows that she also may waive a complaint for other prosecutor comments on rights that may be grounded in the Constitution. We know of no case law holding that allegedly improper comments on the attorney-client privilege may not be waived. Accordingly, this situation does not represent the sort of right that is waivable only, nor an absolute systemic requirement. We hold that, like the Fifth Amendment right to remain silent, commenting upon a defendant invoking the attorney-client privilege, if a constitutional violation, is waivable. We overrule appellant's third point of error.

## Conclusion

For the foregoing reasons, we overrule each of appellant's points of error and affirm the judgment of the trial court.

---

6. Appellant cites *Hardie v. State,* 807 S.W.2d 319, 322 (Tex.Crim.App.1991), for the proposition that the State generally cannot comment upon an defendant's invocation of the right to counsel. However, that case neither addresses directly the invocation of the attorney-client privilege, nor states that commenting upon the right to counsel—which is a separate question from ours—would be error not requiring an objection at trial.