**AFFIRM; and Opinion Filed November 1, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00559-CR

**DONALD CAINE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F11-31232-Y**

## OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Fillmore

A jury convicted Donald Caine of aggravated robbery, found two enhancement paragraphs alleged in the indictment to be true, and assessed punishment of sixty years' imprisonment. In three issues, Caine argues the evidence is insufficient to support the conviction and the trial court erred by admitting evidence of two of Caine's prior convictions and of a photographic lineup. We affirm the trial court's judgment.

### Background

At approximately 7:00 p.m. on June 6, 2011, Clarence Powell (Powell) was parking his car in the driveway leading to his house when he was approached by a man with a chrome revolver. The man told Powell to give him his keys and wallet and to go into the house. Powell

was afraid the man was going to shoot him. The man with the revolver and two other men followed Powell into the house. Powell was told to lie on the floor in the den.

Mallex Powell, Powell's seventeen-year-old son, and his two friends, Ryan Love and Miles Jordan, were in the living room playing games on the computer. Mallex saw a man with what appeared to be a black gun with a red laser dot coming from it. Mallex saw another man behind the first. The man with the gun told the three boys to go into the other room. Thinking it was a joke, Mallex did not immediately comply. The man then "pistol-whipped" Mallex with the barrel end of the black gun. Mallex, Love, and Jordan went into the den where one of the robbers hit Love with a pool "stick." The three boys lay down on the floor, and the robbers tied their hands behind their backs with cord.

The robbers started hitting Powell on his back with pool "sticks," demanding money and drugs. Powell told them that they had all his money and he did not have any drugs. According to Love, Caine was holding a silver revolver and started yelled that he was "going to kill one of these younglings" if Powell did not tell them the location of the money. Love testified that he thought he was going to die. The robbers searched the house and, in addition to the cash from Powell's wallet and Powell's keys, took some rolls of coins from a safe, a ring, a bag of prescription medications, and Powell's and Love's cellphones.

Christopher Powell, Powell's twenty-four-year-old son, was in his bedroom when he heard a commotion. When Christopher opened his bedroom door, he heard a man saying to get down or he would shoot. Christopher hid under his bed and called 9-1-1. Christopher testified he was afraid the men were going to find him or were going to shoot his father and his brother.

According to Mallex, at some point, the robbers realized the police were outside. The robbers moved the boys into the garage and then back into the house. Christopher testified that he left his bedroom and ran into one of the robbers in the hallway. This robber was wearing a

football jersey with the number "19" on it. Christopher saw another robber in his father's bedroom. The robber in the hallway told Christopher to go into the kitchen. As he entered the kitchen, Christopher saw Mallex, Love, and Jordan coming out of the garage with their hands behind their backs. The robbers told Powell, Christopher, Mallex, Love, and Jordan to go into Christopher's room.

Police officers Carlos Canelos and Jerry Bryant responded to Christopher's 9-1-1 call. Although nobody responded to their knocks on the door, the officers could hear sounds from the house and see movement through the windows. Canelos kicked in the door to the house. When he entered the house, he saw a man wearing a jersey with a number on it run out of the back of the house. Canelos chased the man, but was unable to catch him.

As Canelos ran out of the house, Bryant saw a man walking out of the hallway. Bryant put handcuffs on the man and told him to lie on the floor. Bryant heard a noise from the hallway and thought there might be more suspects. He found five people in a bedroom and confirmed they were victims. When Bryant went back into the hallway, the man in handcuffs was gone. At trial, Bryant identified Caine as the man he handcuffed in the hallway.

Police officer Kevin Cox testified that he responded to the 9-1-1 call and began making a perimeter search covering the blocks surrounding the house. As he was making concentric circles around the neighborhood, he kept seeing the same red truck. It appeared the driver was talking on the phone and was looking for somebody. The truck then pulled into a parking lot, and the driver waved Cox over.

When Cox approached the truck, he could see loose cash, rolls of coins, and "a couple of cellphones" in the seat. Jimmie Ned, the driver, told Cox there had been a robbery in the area, his girlfriend had given him a description of the robber, and he was looking for the robber. Powell came to the parking lot where Ned was stopped and gave Cox his cellphone number.

When the police dispatcher called the number, one of the cellphones in Ned's possession began ringing. A ring belonging to Powell was found in Ned's pocket.

Detective Heath Wester questioned Ned. Based on information obtained from Ned, Wester questioned Quarteirrio Barker. Although both Barker and Ned initially denied any involvement in the robbery, they ultimately admitted they participated in the robbery and identified Caine as the other person involved.

Christopher reviewed photographic lineups and identified Barker as the robber in the hallway. He also positively identified Ned as the robber in his father's bedroom, but was not as certain of this identification as he was of his identification of Barker. Mallex also viewed photographic lineups and identified Ned as one of the robbers. Love viewed photographic lineups, but was able to identify only Caine. Love testified he got a "really good look" at Caine. In viewing the photographic lineup, Love initially thought a different person in the lineup might be the robber because that person looked bigger. However, he did not select that person and, after thinking about it, identified Caine.

Bryant also reviewed a photographic lineup and identified Caine as the man he handcuffed in the hallway. At the time he viewed the lineup, Bryant was seventy percent confident it was the same man. However, according to Bryant, he would not identify someone unless he was certain of the identification. Bryant testified that he recognized Caine at trial and that he was certain Caine is the man he saw in the hallway.

Wester obtained an arrest warrant for Caine and a search warrant for his residence. When officers entered Caine's residence, they discovered a hole in the wall of a closet that opened into the adjacent duplex. They found Caine hiding in a crawl space under a water heater in the adjacent duplex. The police also found a key to a Mercedes in Caine's residence. Powell testified the Mercedes key was his key.

At trial, Ned testified he had pleaded guilty to the robbery and identified Barker and Caine as the other two men who participated in the robbery. Although Ned knew Barker prior to the robbery, he had never met Caine prior to the robbery. Caine said there would be pharmaceutical drugs at the house. According to Ned, Caine provided two pistols; one was black and one was chrome. Ned admitted that he approached Powell with one of the guns. Powell and "three from the back" were told to lie on the floor. Ned testified they took rolls of coins, a ring, a cellphone, and a bag of "prescription bottles" from the house. According to Ned, nobody in the house was hit with a gun and there were no threats to kill anybody. When the police kicked the door, Ned ran out of the house. He went to the side of his truck and pretended he was pouring gas into the truck. He saw Barker run past him and an officer chasing Barker. He began driving around the neighborhood looking for Barker. He was eventually stopped by a policeman.

Barker testified he had pleaded guilty to the robbery and that Ned and Caine also participated in the robbery. Barker has known Caine for twenty years and considers him to be a family member. Barker confirmed that Ned approached Powell in the driveway with the gun. Barker, who had a black gun with a "dot beam" on it, went into the back room and ordered the young men in the room to move to the front of the house. Barker denied hitting anyone with the gun, but admitted hitting Powell with a pool "stick." Barker testified Ned threatened to kill Powell if he did not provide the location of drugs and money. When the police kicked in the door, Barker ran out of the back of the house. He hid in some bushes, and the officers did not find him. Barker testified he was wearing a white and blue "Cowboys" jersey.

The jury found Caine guilty of aggravated robbery, found the two enhancements alleged in the indictment to be true, and assessed punishment of sixty years' imprisonment.

**Sufficiency of the Evidence**

In his first issue, Caine asserts the evidence is insufficient to support the verdict because it was based on accomplice witness testimony that was corroborated by only unreliable witness identification. Article 38.14 of the code of criminal procedure provides a conviction cannot stand upon accomplice testimony unless it is corroborated by other evidence that tends to connect the defendant with the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005); *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). The corroborating evidence is insufficient if it merely shows the offense was committed. TEX. CODE CRIM. PROC. ANN. art. 38.14; *Smith*, 332 S.W.3d at 439. This rule reflects a legislative determination that accomplice testimony implicating another person should be viewed with caution because accomplices often have incentives to lie in order to avoid punishment or shift blame to another person. *Smith*, 332 S.W.3d at 439 (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)). An accomplice is one who participated with the defendant before, during, or after the commission of a crime with the requisite mental state. *Smith*, 332 S.W.3d at 439.

In reviewing the sufficiency of corroborative evidence, we eliminate the accomplice testimony from consideration and look to the remaining portions of the record to determine if there is any evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). We judge the sufficiency of the non-accomplice evidence according to the particular facts and circumstances of each case. *Smith*, 332 S.W.3d at 442; *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). The corroborating evidence may be direct or circumstantial, and need not be sufficient by itself to establish the defendant's guilt. *Smith*, 332 S.W.3d at 442; *Malone*, 253 S.W.3d at 257. It is sufficient corroboration if the combined force of all the non-accomplice evidence shows that rational jurors could have found that it sufficiently tended to connect the defendant to the

offense. *Smith*, 332 S.W.3d at 442. Therefore, "when there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense)," we defer to the view of the evidence chosen by the jury. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009); *see also Smith*, 332 S.W.3d at 442. It is not appropriate for us to independently construe the non-accomplice evidence. *Smith*, 332 S.W.3d at 442.

Caine contends the non-accomplice evidence was insufficient to corroborate Barker's and Ned's testimony that Caine participated in the robbery. However, at trial, Love identified Caine as one of the robbers, and Bryant identified Caine as the man he handcuffed in the hallway. Further, shortly after the robbery, both Love and Bryant identified Caine from a photographic lineup. Although Caine argues that Love's and Bryant's identifications of him from the photographic lineups were unreliable and insufficient to corroborate the accomplice evidence, any uncertainty in either identification went to the weight of the evidence, not its admissibility. *See Simmons*, 282 S.W.3d at 509 (witness's uncertainty about whether voice of robber and voice of defendant were same went to weight of testimony, not its inadmissibility).

In addition to Love's and Bryant's identifications of Caine as one of the robbers, the State offered evidence that a Mercedes key was found in Caine's residence at the time of his arrest. Powell testified this key was his Mercedes key. Caine's unexplained possession of recently stolen property permits an inference that he is the one who committed the robbery. *See Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007) (It is a "well-settled rule that a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary."); *Taylor v. State*, 859 S.W.2d 466, 468 (Tex. App.—Dallas 1993, no pet.).

We conclude a rational jury could have found that the non-accomplice evidence tended to connect Caine with the robbery. Accordingly, Barker's and Ned's testimony that Caine was involved in the robbery was sufficiently corroborated. We resolve Caine's first issue against him.

**Prior Convictions**

In his second issue, Caine asserts the trial court erred by admitting State's exhibits 66 and 67, two of Caine's prior convictions, into evidence during the punishment phase of the trial because the evidence failed to sufficiently link those convictions to Caine.

To establish that a defendant has been previously convicted, the State must prove, beyond a reasonable doubt, both the existence of the prior conviction and that the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). Texas law does not require that the existence of a prior conviction or linking of the defendant to the prior conviction be proven in any specific manner. *Id.* at 921–22. In making its proof, the State may use "[a]ny type of evidence, documentary or testimonial." *Id.* at 922. The existence of a prior conviction and linking of the defendant to the prior conviction may be established by certified copies of the prior judgment and sentence and records of the State containing fingerprints of the individual previously convicted, supported by expert testimony identifying those fingerprints as identical to known fingerprints of the defendant. *See Vessels v. State*, 432 S.W.2d 108, 117 (Tex. Crim. App. 1968) (op. on reh'g); *see also Griffin v. State*, 181 S.W.3d 818, 820 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("Typically, the State will present fingerprints included in the pen packet, have a fingerprinting expert take fresh fingerprints from the defendant, and then conclude from comparison that the defendant on trial is the same person convicted of the previous offense."). Other methods of proving prior convictions include the testimony of a witness who personally knows the defendant and the facts of his prior conviction

and identifies him, or a stipulation or judicial admission of the defendant. *See Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986). The evidence offered could also include photographs of the convicted individual for comparison with the defendant by the fact finder, or identification information such as name, gender, height, eye color, hair color, and date of birth. *See Williams v. State*, 946 S.W.2d 886, 895 (Tex. App.—Waco 1997, no pet.). The approved methods for proof of identity set forth in various Texas appellate court opinions are not exclusive and may often include the use of a combination of methods. *Beck*, 719 S.W.2d at 210. The State may use circumstantial evidence to prove the defendant is the same person named in the prior conviction. *Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988) (op. on reh'g). The fact finder looks at the totality of the admitted evidence to determine whether there was a previous conviction and whether the defendant was the person convicted. *Flowers*, 220 S.W.3d at 923. The court of criminal appeals has recognized that:

> ordinarily the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles pieces of a jigsaw puzzle. The pieces standing alone usually have little meaning. However, when the pieces are fitted together, they usually form the picture of the person who committed the alleged prior conviction or convictions.

*Human*, 749 S.W.2d at 835–36.

As to State's exhibit 66, Deputy Willie Washington testified that she is employed in the identification section of the Dallas County Sheriff's Department. During trial, she took fingerprints from Caine and compared them to fingerprints on a number of prior convictions. Washington testified that State's exhibit 66 is a certified copy of a June 2, 1995 conviction of Donald Alexander Caine for aggravated assault. The fingerprints on State's exhibit 66 are the same as the fingerprints Washington obtained from Caine during trial. We conclude the prior conviction set out in State's exhibit 66 was sufficiently linked to Caine, and the trial did not err by admitting exhibit 66. *See Vessels*, 432 S.W.2d at 117; *Griffin*, 181 S.W.3d at 820.

As to State's exhibit 67, Washington testified the exhibit is a prior conviction of Donald Caine for Class A Misdemeanor Assault.[1] However, the fingerprints in exhibit 67 are not readable. On its face, exhibit 67 states Donald Caine was convicted on February 2, 1995 in case number F94-29229 out of the 291st Judicial District Court in Dallas County, Texas.

State's exhibit 65 is a conviction of Donald Alexander Caine on February 2, 1995 for kidnapping. The case number of the conviction is F-9429227 and it is out of the 291st Judicial District Court in Dallas County, Texas. State's exhibit 66 is a conviction for Donald Alexander Caine in case number F94-29226 and is out of the 291st Judicial District Court in Dallas County, Texas. State's exhibit 68 is a conviction of Donald Alexander Caine on February 2, 1995 for robbery. The case number of the conviction is F94-29228, and it is out of the 291st Judicial District Court in Dallas County, Texas.[2] Each of the judgments in State's exhibits 65, 66, and 68 indicate the defendant pleaded guilty, was sentenced to two years' imprisonment, and was assessed a $500 fine.

Washington linked the conviction for aggravated assault in State's exhibit 66 to Caine by comparing the fingerprints in that exhibit to Caine's fingerprints. Exhibits 65 through 68 contain four convictions for Donald Caine or Donald Alexander Caine out of the same court on the same date. The convictions have consecutive case numbers. We conclude the evidence sufficiently linked the conviction for misdemeanor assault to Caine, and the trial court did not err by admitting State's exhibit 67. *See Human*, 749 S.W.2d at 835–36. We resolve Caine's second issue against him.

---

[1] The prosecutor incorrectly referred to this conviction as "Exhibit 66." A review of the exhibits demonstrates Washington was testifying about State's Exhibit 67.

[2] Caine has not complained on appeal about the admission into evidence of State's exhibits 65 and 68.

**Photographic Lineup**

In his third issue, Caine contends the trial court erred by admitting into evidence the photographic lineup viewed by Bryant because the lineup was not relevant. We review a trial court's rulings on the admissibility of evidence under an abuse of discretion standard. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We must affirm the trial court's ruling so long as it lies within the zone of reasonable disagreement. *Billodeau*, 277 S.W.3d at 39. In other words, we must uphold the trial court's ruling if it "was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made." *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006) (quoting *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004)).

Caine first argues the lineup was not relevant because there was no testimony as to why Caine's picture was included in the lineup. At trial, Caine objected to the lineup based on relevance because "[t]his is not positive identification." Caine did not object to the admission of the lineup on the basis there was no evidence as to why Caine's picture was included in the lineup. Accordingly, Caine has waived this basis for his objection on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Clark v. State*, 365 S.W.3d 333, 339–40 (Tex. Crim. App. 2012) (holding that appellant failed to preserve complaint for review when trial objection did not comport with issue raised on appeal).

Caine also contends the lineup was not relevant because Bryant's identification of Caine in the lineup was tentative. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. The photographic lineup and Bryant's identification of Caine in the lineup have a tendency to make Caine's identity as the third robber more probable than it would be without the evidence. Therefore, the lineup was

relevant. *See id.*[3] Further, any uncertainty by Bryant in his identification of Caine in the photographic lineup would go to the weight to be afforded the evidence rather than to its admissibility. *See Shamam v. State*, 280 S.W.3d 271, 276 (Tex. App.—Amarillo 2007, no pet.). We resolve Caine's third issue against him

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120559F.U05

---

[3] *See also Morgan v. State*, No. 05-09-00173-CR, 2010 WL 1224318, at *4 (Tex. App.—Dallas Mar. 31, 2010, no pet.) (not designated for publication).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DONALD CAINE, Appellant

No. 05-12-00559-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas,
Trial Court Cause No. F11-31232-Y.
Opinion delivered by Justice Fillmore, Justices Bridges and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 1st day of November, 2013.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE