

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00100-CR

———————————————————

CALVIN WILSON GRAVES, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR19-1067

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

A jury found Appellant Calvin Wilson Graves guilty of the offense of continuous sexual abuse of a child. *See* Tex. Penal Code Ann. § 21.02(b). The jury also assessed Appellant's punishment at life in the Texas Department of Criminal Justice–Institutional Division. The trial court rendered judgment in accordance with the verdict.

In a single issue, Appellant contends that the State's closing arguments in the guilt–innocence and punishment phases of trial (1) improperly commented on his choice not to testify, (2) injected facts not included in the trial record, and (3) "infected the trial with unfairness to such a degree that it violated Appellant's rights to due process under the Fourteenth Amendment." Appellant failed to preserve the first and third complaints within his sole issue because he failed to make an objection on those bases in the trial court; the one objection that he did make does not comport with the arguments raised in his first and third complaints. Further, the complaints lack merit because (1) the State's argument did no more than it was entitled to do by commenting on pretrial statements made by Appellant, and Appellant's argument—that doing so was a comment on his failure to testify—has neither logical nor legal force; (2) the State's argument did not interject facts not included in the record; and (3) Appellant's general Fourteenth Amendment challenge

2

cannot stand as a result of the failure of his specific challenge to the State's closing arguments. Accordingly, we affirm the trial court's judgment.

## II. Factual Background

Appellant is married to Complainant's great aunt. During a period in 2013, Appellant and his wife lived with Complainant and her family. After living in the same duplex unit as Complainant, Appellant and his wife later moved to a nearby duplex in the same housing complex. According to Complainant, the abuse from Appellant began when she was seven or eight years old and Appellant was in his fifties.

Complainant testified that, during the period that Appellant lived in her home and in the nearby unit, he committed a number of acts of sexual abuse against her.[1] Appellant does not challenge that the evidence was sufficient to establish that he had

---

[1]Penal Code Section 21.02(b) provides that

[a] person commits an offense if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
>
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:
>
>> (A) a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense[.]

Tex. Penal Code Ann. § 21.02(b).

committed continuous sexual abuse of a child; thus, it is unnecessary for us to detail the acts of abuse about which Complainant testified.

Complainant testified that Appellant described himself as a preacher and that God had told him that he and Complainant should be together. She also testified that he repeatedly told her that she was unloved, that her brother was her mother's (Mother) favorite, and that Complainant would go to hell if she told anyone of Appellant's sexual acts with her. Complainant testified that she feared the consequences of revealing the abuse and that out of fear she did not outcry until 2019 when she told her brother and then Mother of the acts that Appellant had committed against her. Mother reported the outcry to the local police, and the local police requested the assistance of the Parker County Sheriff's Department. The sheriff's department assigned one of its crimes-against-children investigators to the case.

A forensic interview of Complainant was conducted at a local child advocacy center, and the interview was observed remotely by the investigator. After he had observed the interview, the investigator asked Mother to call Appellant and confront him with a fabricated story that she had found a diary that had been written by Complainant and that detailed the abuse allegedly committed by Appellant. Mother called Appellant while the investigator listened over the phone's speaker. The investigator termed the call a one-party-consent call.

A recording of the call, which lasted approximately seven minutes, was admitted into evidence and played for the jury. Mother used the fabricated story that

4

she had found a diary that Complainant had written in. During the call, Appellant repeatedly denied that he had touched Complainant and denied that the events that Complainant had detailed in her interview had occurred. Appellant also denied that he was implying that Complainant had lied, contending instead that Complainant was fantasizing that the events had occurred. At one point in the conversation, Appellant suggested that Mother would not be able to go to Heaven if she persisted in her allegations against him.

The next step taken by the investigator was an in-person interview of Appellant in his home. A recording of the interview, which lasted more than an hour, was also introduced into evidence and played for the jury. During the interview, Appellant described himself as a former police officer, a counselor, and a minister. Early in the interview, he stated that based on his experience in these roles, seven out of ten allegations of sexual abuse are "bogus." In Appellant's words, "[A]ny bitch can say anything about any guy." He stated that he was around children all the time and had taken training in the church that he was involved with about "flag warnings" for abuse and how to handle abuse and report it. He had received this training after he had asked to be able to volunteer in a church's Vacation Bible School. He stated that while on disability, he had obtained a human services degree and planned to work in the court system, including counseling juveniles.

During the interview, Appellant repeatedly denied that he had initiated any sexual contact with Complainant and denied that the sexual contact described by

5

Complainant had occurred. He claimed that Complainant was troubled and had a strained relationship with Mother that had resulted in some part from Mother's drug problems. In Appellant's view, Complainant had a "unique, unusual liking" for him. He thought that if a girl her age had an infatuation with a man his age, then something was wrong with the child. He detailed conduct by Complainant at the age of eight or nine that included asking if they could live together in a foreign country, grabbing his penis, and lying in front of him naked and exposing her genitals. He also claimed that Complainant had told him that she had watched pornographic movies while Mother was asleep. He recounted that Complainant had told him of prior incidents of sexual abuse that she had experienced and that, in her words at eight or nine years of age, she had engaged in some of every type of sexual behavior, except sexual intercourse. Appellant reported none of Complainant's alleged conduct or statements to Mother or to law enforcement and excused the failure to do so because of Mother's drug problem and the fact that Complainant was blood relation to his wife and not himself.

Not unexpectedly, in arguing its case, the State referred to the recordings of the one-party-consent call and the interview during its closing argument in both the guilt–innocence and punishment phases of trial. We will set forth the portions of the closing arguments that Appellant quoted in his brief and highlight the same portions of the quoted material that he did. First, Appellant quoted from the opening portion of the State's closing argument during the guilt–innocence phase:

6

In opening statement[,] I mentioned that you're going to **hear from [Appellant's] own mouth. You heard in his interview**, and I characterize it as him trying to groom [the Parker County Sheriff's Department investigator], and I hope . . . that stuck out to you. So what [Appellant is] doing in every turn in the investigation is trying to find common ground for [the investigator]. So he starts it off as, well, in my ministry and counseling, eight out of ten of these people are innocent in jail. He says, I used to be a cop just like you. It doesn't work. So I used to be a counselor, no a therapist, I'm a minister. I'm one of 15 people in the United States who's taken online human services classes, whatever he was talking about. He's trying to get [the investigator] on his side, on his team. **And he said a few things in his interviews. With [Mother] on the one-party[-]consent call, it's striking that he said to [Mother], you can't prove it; she can't prove it.** Yes, we can, and we did. **In his interview with [the investigator], [Appellant said, "S]he came onto me.** She came onto me. It's not my fault. Yeah, there was contact. It was her.["] This (indicating). This is who he was talking about when he said she came onto me. Her (indicating). A little girl grabbing his junk sitting naked on the ottoman. Lies.

Appellant then quoted a portion of the State's rebuttal argument in the guilt–innocence phase. This quote includes the sole objection that Appellant made to the State's argument:

> **This -- let's go through it.** Cop, slash, counselor, slash, minister, slash, I'm disabled, but I got this online degree in human counseling, and I'm going to work in the courts with juveniles -- okay, that's not disturbing -- but I haven't got my degree yet because I haven't paid them that money, but I can't work, but I'm about to go back to work, but I'm probably going to be dead by my birthday, which was three years ago. These are the things you're talking about -- **that you're hearing him tell you. Does it make any sense to you? Because surely it doesn't make any sense to me. But this is the world we live in when we deal with [Appellant]. How many times did you hear him say, I'm not calling her a liar? I'm not calling her a liar. I'm not calling her a liar. Okay. I don't know what the hang-up with that word is, because, so help me God, if I'm accused of molesting a child, I will be yelling at you as long as you would listen to me. I don't know what that crazy person said; she's lying; I did not do it; she**

**is a liar. So I don't know what his hang-up is with that word, but I don't have a problem saying it. This abomination of a fake Christian man is a liar.** He lies. That's what he does. He lies, he manipulates whoever it is that he needs to control, to accomplish his own goals. He lied about [Complainant] grabbing at his junk. He lied about that ridiculous ottoman story. **He has lied and manipulated this whole situation. Everything that came out of his mouth to [the investigator] was either self[-]promotion or a lie. That's the fact of the matter. Don't you find it weird that the night of the phone call with [Mother] or the conversation with [the investigator], nobody told him [that] this [had] happened when she's eight or nine? Don't you think it's weird [that] he automatically knew what they were talking about? He's been in her life her whole life, really, to hear them tell it.**

**Their whole life, they've been around. It could have been when she -- she could have said when she** was in kindergarten one time you fondled her on the bus, or she could have made up the story, but, **automatically, he goes to, oh, she was eight or nine at the time. Oh, yeah, it was -- the diary was when she was eight or nine. Really?**

[Appellant's counsel]: [[Judge, I'm going to object; that's a misstatement as the facts presented to the jury. In the one-party[-]consent call between [Mother] and [Appellant], [Mother] mentioned --[]

[State's counsel]: [[Judge, I appreciate him--[]

District Court: []Overruled.[]

[State's counsel]: []Thank you.[]

Finally, Appellant quoted a portion of the State's closing argument during the

punishment phase:

I don't know if you want to start at the top and start kicking stuff off for mitigation, **but when you're thinking about whether you want to give mitigation to him, whether you want to minimize the sentence, I want you to remember his words:** All the children he's worked around; all the ministries he's done; how he seeks out [V]acation

[B]ible [S]chool; how he's going to work in the court system so he can work with juveniles. **This is a man who, by his own words, that he has sought out opportunities to be alone and have access to children in a trusted position. Because what do you do when you get that and you're a pedophile or you're sexually inclined towards eight-year-old[] [kids]? You put yourself in a position of trust so that you have access**, the parents think you're great, how hard -- how bad can he be? He's an old man; he's so cute; oh, my gosh, he volunteers all the time. That should scare you to death as a parent, a grandparent, an uncle, a cousin, a brother that people like this are running around in our community.

### III. Analysis

### A. Appellant forfeited most of his contentions of error by failing to object to the State's closing arguments.

Appellant predicates the lion's share of his appellate issue on the contention that the State impermissibly referred to his failure to testify by referencing the statements that he made in the one-party-consent call and his interview. The portions of the record that Appellant himself quotes reflect that he made no objection that the State was making such an impermissible reference. He also argues that the State's improper argument was of such a magnitude that it deprived him of his due-process rights under the Fourteenth Amendment to the United States Constitution, but again, he made no objection on this ground. Appellant's only objection was that one limited portion of the State's argument misstated the evidence. This objection does not comport with the complaints that he raises on appeal, nor did it present his appellate complaints to the trial court in order to give that court an opportunity to rule on

9

them. Thus, Appellant's primary issue fails initially because he has forfeited his complaints on appeal.

It is foundational that a party wishing to complain on appeal must preserve the complaint by objecting in the trial court. Tex. R. App. P. 33.1(a). An adequate objection must be specific enough to make it apparent what the objection is (unless the grounds are apparent from the context). *Id.* One of the Court of Criminal Appeals's latest opinions on the topic noted that

> [t]o preserve error on these kinds of claims, a defendant must make a timely objection stating the grounds for his desired ruling with sufficient specificity to make the trial court aware of the claim, unless the specific grounds were apparent from the context. *See* Tex. R. App. P. 33.1(a)(1)(A). Magic words are not required, but the defendant must at least "let the trial judge know what he wants [and] why he thinks himself entitled to it," and he must "do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

*Hall v. State*, No. AP-77,062, 2021 WL 5823345, at *15 (Tex. Crim. App. Dec. 8, 2021), *cert. denied*, 143 S. Ct. 581 (2023). Further, to preserve a complaint for appellate review, a "point of error on appeal must comport with the objection made at trial." *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014): *see also Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1999) (op. on reh'g) (noting that, to preserve error for appellate review, the point of error on appeal must comport with the objection at trial).

10

We recently detailed that if an appellant wishes to complain that the State's argument impermissibly referred to a failure to testify, the appellant must object to the argument on that basis or else forfeit that complaint on appeal:

> A complaint about a prosecutor's comment on the defendant's failure to testify, like most other complaints, is forfeited by a failure to comply with the requirements for error preservation under Texas Rule of Appellate Procedure 33.1. Tex. R. App. P[.] 33.1; *Hopper v. State*, 483 S.W.3d 235, 236–37 (Tex. App.—Fort Worth 2016, pet. ref'd); *see also Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004) (stating that most types of complaints are forfeited by the failure to present a timely, specific objection, request, or motion to the trial court for a ruling). [Appellant] did not object to the prosecutor's argument and, accordingly, assuming that the prosecutor's statement was a comment on [appellant's] failure to testify, he forfeited any error arising from the prosecutor's argument. *See Garcia v. State*, 887 S.W.2d 862, 877 (Tex. Crim. App. 1994), *abrogated in part on other grounds by Hammock v. State*, 46 S.W.3d 889 (Tex. Crim. App. 2001); *Hopper*, 483 S.W.3d at 237.

*Cruzado v. State*, Nos. 02-19-00049-CR, 02-19-00050-CR, 2020 WL 1173700, at *3 (Tex. App.—Fort Worth Mar. 12, 2020, pet. ref'd) (mem. op., not designated for publication).

Our court is not alone in its holding that a claim of error that the State commented on the defendant's failure to testify must be preserved by objection or else forfeited. The Fourteenth Court of Appeals has held similarly:

> Appellant relies on . . . comments from the State's closing that "we don't know why something happened" and "I want to know why, too" as examples of fundamental error affecting appellant's right not to testify. The [C]ourt of [C]riminal [A]ppeals, however, has held that a challenge to improper jury argument is a forfeitable right that must be preserved by objection in the trial court. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) ("However, a defendant's 'right' not to be subjected to incurable erroneous jury arguments is one of those rights

11

that is forfeited by a failure to insist upon it."). Likewise, our court has observed that, while comments about a defendant's decision not to testify "are a constitutional violation, a defendant waives her right to complain on appeal if she fails to make a timely, specific objection to those comments." *Griffin v. State*, 181 S.W.3d 818, 823 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *McLendon v. State*, 167 S.W.3d 503, 510 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)). Accordingly, we disagree that a comment during closing argument about appellant's choice not to testify constitutes fundamental error that may be raised for the first time on appeal.

*Banks v. State*, No. 14-19-00238-CR, 2021 WL 970436, at *5 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.) (mem. op., not designated for publication).

Further, as the Court of Criminal Appeals has recently held, a complaint that a statement in closing argument violates the Fourteenth Amendment must also be preserved by objection. *Hall*, 2021 WL 5823345, at *15; *see also Banda v. State*, 890 S.W.2d 42, 61 (Tex. Crim. App. 1994) (holding that an objection is required to preserve a claim that a prosecutor's closing argument violated the Eighth and Fourteenth Amendments when he "misstated the law, argued matters outside the record, and repeatedly attempted to inflame the jury during closing arguments"). The one case that Appellant cites to support his Fourteenth Amendment argument, and which holds that an objection is not necessary, appears to no longer be good law. *See Miller v. State*, 741 S.W.2d 382, 391 (Tex. Crim. App. 1987).[2]

---

[2]The Fourteenth Court of Appeals charted the demise of *Miller*'s preservation holding as follows:

> Appellant cites *Miller v. State* for the standard of review for this issue. *See* . . . 741 S.W.2d [at] 391 . . . . This is not the correct standard of review.

12

In his brief, Appellant does not make any argument that his one objection directed at an alleged misstatement of the evidence is specific enough to preserve his complaints on appeal or that his objection comports with those complaints. Indeed, he says nothing about preservation of his complaint at all other than an oblique reference "that violation of [A]rticle 38.08 is not automatically reversible error."[3] The objection made did not even hint that Appellant was contending that the State had

> To preserve a complaint of improper jury argument for appellate review, a party must have presented to the trial court a timely and specific objection that stated the specific grounds for the desired ruling. *See* Tex. R. App. P. 33.1(a)(1); *Cockrell* . . . , 933 S.W.2d [at] 89 . . . . The *Miller* case relies on *Romo v. State* and related cases. *See id.*; *Romo v. State*, 631 S.W.2d 504 (Tex. Crim. App. [[Panel Op.]] 1982). In *Cockrell v. State*, the Court of Criminal Appeals overruled *Montoya v. State* and *Romo v. State* and any other cases allowing an exception to normal error-preservation rules for improper and incurable jury argument. *See Cockrell*, 933 S.W.2d at 89, *overruling Montoya v. State*, 744 S.W.2d 15 (Tex. Crim. App. 1987)[,] and *Romo* . . . , 631 S.W.2d 504 . . . . For appellant to complain on appeal about erroneous jury argument—including erroneous argument that was so prejudicial that an instruction to disregard could not have cured it— appellant must show that he objected at trial to this argument and that he pursued his objection to an adverse ruling. *See Cockrell*, 933 S.W.2d at 89; *Garcia* . . . , 887 S.W.2d [at] 877 . . . (holding that no error was preserved when appellant did not object to State's alleged comment during closing argument on appellant's failure to testify), *abrogated in part on other grounds by Hammock* . . . , 46 S.W.3d [at] 892–93 . . . ; *Campos v. State*, 946 S.W.2d 414, 416–18 (Tex. App.—Houston [14th Dist.] 1997, no pet.) [(op. on reh'g)].

*Ybarra v. State*, No. 14-02-00438-CR, 2003 WL 22097802, at *4 (Tex. App.—Houston [14th Dist.] Sept. 11, 2003, pet. ref'd) (mem. op., not designated for publication).

[3]*See generally* Tex. Code Crim. Proc. Ann. art. 38.08 ("Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.").

commented on his failure to testify or that its argument was so extreme that it violated principles of due process.  Thus, Appellant bases the primary complaints in his appeal on arguments that he has forfeited.

**B.**     **The State did not improperly refer to Appellant's failure to testify by referring to his pretrial statements.**

Even if we were to review the merits of Appellant's issue that the State impermissibly commented on his failure to testify, we would conclude that there is no error.  Appellant tries to argue that error occurred when the State commented on evidence that was admitted in the form of the recordings of the one-party-consent call and the interview but raises no complaint to the admission of those pieces of evidence.  Thus, he argues that the State's comment on what he had said during those interactions was error, even though he makes no argument that an error occurred when the jury heard his words in the first place.  What we cannot understand is how a comment on words that Appellant had already uttered created the type of error that he alleges occurred—drawing the jury's attention to his failure to testify at trial.  The State did not comment on what Appellant had not said by his failure to testify but on what he *had* said during the one-party-consent call and the interview.

It is axiomatic that both the United States and Texas Constitutions protect a criminal defendant from being compelled to give evidence against himself.  U.S. Const. amend. V; Tex. Const. art. I, § 10.  The Code of Criminal Procedure prohibits counsel from alluding to or commenting on the failure of a defendant to testify.  Tex.

14

Code Crim. Proc. Ann. art. 38.08. To make such a comment is both a constitutional and a statutory violation. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011).

But the Court of Criminal Appeals holds that for an argument to constitute a comment on the failure to testify, the comment must be a clear reference to the defendant's exercise of that right. *Id.* The following test determines whether an argument crosses the line into an impermissible comment on the exercise of the right not to testify:

> In assessing whether the defendant's Fifth Amendment right has been violated, courts must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument. Thus, the implication that the State referred to the defendant's failure to testify must be a clear and necessary one. If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation. As the Fifth Circuit has stated, "We cannot find that the prosecutor manifestly intended to comment on the defendants' failure to testify, if some other explanation for his remark is equally plausible." The test, then, is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Id.* (footnotes omitted).

And counterbalanced against the principle that the State cannot comment on a defendant's refusal to testify is the general rule that prescribes the types of proper argument, which fall "into four distinct categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's

15

argument; or (4) a plea for law enforcement." *Lumsden v. State*, 564 S.W.3d 858, 900 (Tex. App.—Fort Worth 2018, pet. ref'd) (citing *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008)).

It would appear logical that when a defendant's statements are in evidence, it is fair game for the State to comment on those statements and not run afoul of the prohibition of commenting on the defendant's failure to testify. The Court of Criminal Appeals has confirmed this principle: "[W]hen a defendant makes a statement [that] is admitted into evidence, the State's reference to the statement and comparison between the statement and the other evidence collected is not a comment on the defendant's failure to testify or his right to remain silent." *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).

To dispose of Appellant's contention that the State commented on his failure to testify, we quote Appellant's entire argument, in which he attempts to apply the relevant legal principles to the facts of this appeal:

> The governing legal standard in this appeal, under *Montoya*, is "if the prosecutor's remark called to the jury's attention the absence of evidence that could only be supplied by the testimony of the accused, the comment is improper and the conviction is subject to being reversed." . . . 744 S.W.2d at 35. While it only takes one, here is a proposed list of remarks by the prosecutors (all set forth in full above) that called to the jury's attention the absence of an explanation about dialogue in the recordings that only Appellant could have supplied had he testified:
>
> • Trying to groom [the investigator.]
>
> • Trying to get [the investigator] on his side, on his team[.]

16

- Told [Mother] she can't prove it[.]

- "[Complainant] came onto me" in interview with [the investigator.]

- These are the things you're hearing him tell you—does it make any sense to you, because surely it doesn't make any sense to me[.]

- How many times did you hear him say, I'm not calling her a liar? I don't know what the hang-up with that word is, because, so help me God, I will be yelling at you as long as you listen to me that . . . she's lying, I did not do it, she is a liar[.]

- Everything that came out of his mouth to [the investigator] was either self[-]promotion or a lie[.]

- Don't you think it's weird he automatically knew what they were talking about?

- She could have made up the story, but automatically, he goes to . . . oh yeah, the diary when she was eight or nine. Really?

- This is a man who, by his own words, . . . has sought out opportunities to be alone and have access to children[.]

- Because what do you do when you get that and you['re] a pedophile or you're sexually inclined towards eight-year-old[] [kids]? You put yourself in a position of trust so that you have access[.]

We reject Appellant's argument that the statements that he quoted constitute an impermissible comment on his refusal to testify for the following reasons:

- Appellant fails to explain why the State's argument does not fall within the rule that "the State's reference to the [defendant's] statement and comparison between the statement and the other evidence collected is not a comment on the defendant's failure to testify or his right to remain silent."

17

*Garcia*, 126 S.W.3d at 924. Other than the narrow argument to which Appellant lodged an objection, he does not even contend that the arguments misstate the evidence.

- Appellant does not reference or attempt to apply the rule from *Randolph* that we must resolve any ambiguities in the language of an argument in favor of it being a permissible argument, that the implication that the defendant has failed to testify must be a clear and necessary one from the argument, and that indirect allusion to a failure to testify does not satisfy the test to make an argument improper. *See* 353 S.W.3d at 891. At the end of the day, the test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Id.* Here, the State's closing argument referenced what the jury had heard—not what it had *not* heard. Appellant never explains how those references would prompt the jury to conclude that the State had necessarily commented on his failure to testify in further explanation of his statements.

- Appellant appears to argue that any time there was a reference to a statement that he had made, his right to refuse to testify was infringed because the reference might prompt a desire on his part to explain the statements. He offers no coherent rationale for such a rule. Nor does

18

Appellant explain the limits of this rule or how it is consistent with a prosecutor's ability to refer to a defendant's prior statement and compare that statement to other evidence in the case. For example, would Appellant condemn the State's mentioning a confession? After all, the admission of a confession might prompt a desire to explain that could require the defendant to testify. Nor does Appellant explain why his argument would not create a Catch-22 for the prosecution any time it had a statement from the defendant: if a defendant's statement were introduced into evidence and he did not challenge the admission of the statement on appeal, then under Appellant's theory, the State could not base an argument on what the defendant had said in the statement that was admitted into evidence or the State would risk being accused of referring to the defendant's refusal to testify. Again, that rule would be directly contrary to the principle that the State can refer to a defendant's prior statement and compare it with other evidence in the case. *See Garcia*, 126 S.W.3d at 924.[4]

---

[4]As a justice of our court noted when analyzing an argument similar to the one made by Appellant in this case:

> And, as the [Court of Criminal Appeals] has further instructed, any ambiguities in the language used must be resolved in favor of it being a permissible argument. *Randolph* . . . , 353 S.W.3d [at] 891 . . . . Given that the prosecutor deliberately confined her argument in her second statement to the context of [appellant's] failure to provide a complete story during his conversation with law enforcement, there was no right-against-self-incrimination objection to be preserved.

19

Here, Appellant does not contend that the State did anything in its closing arguments other than refer to and draw deductions from his prior statements. Those arguments were within the bounds of proper argument and do not constitute a comment on Appellant's exercise of his right not to testify.

## C. The State did not misstate the evidence in its closing argument.

As noted above, Appellant made one objection to the State's closing argument—that the prosecutor had misstated the evidence when she had stated that it was "weird" that Appellant knew that Complainant was eight or nine when she claimed that the abuse had occurred. Other than quoting the portion of the argument where the objection was made, Appellant does not explain how the State's objected-to statement was a misstatement of the evidence.[5] The State charts why the argument was a reasonable deduction from the evidence as follows:

> During the recorded phone call, [Mother] asked if [Complainant] would just make the allegations up, write it in a diary[,] and not tell anyone. In response, [Appellant] asked [Mother] why [Complainant] would state that she was going to run away from home and why she would ask him how she could live on her own and if she could make out with his son. [Mother], in turn, states that [Complainant] did not ask about making out and that [Complainant] was eight years old. [Appellant] then says, "Ok, she was eight, nine years old. So that's whenever she wrote all that crap, I guess."

*Morris v. State*, No. 02-16-00171-CR, 2017 WL 2590569, at *7 (Tex. App.—Fort Worth June 15, 2017, pet. ref'd) (mem. op., not designated for publication) (Sudderth, J., concurring).

[5]We review the trial court's ruling on an improper-jury-argument objection under an abuse-of-discretion standard. *Lumsden*, 564 S.W.3d at 900.

20

But [Mother] did not say the diary was written when [Complainant] was eight or nine, nor did she say the sexual abuse took place at that time. Instead, [Mother] told [Appellant] that [Complainant had] told someone that she was going to run away when she was eight and that she got mad[] at her momma when she was eight. [Appellant] responded by saying that [Complainant] [had] wr[itten] the diary when she was eight or nine, even though no mention of being nine years old had been made and even though no one had stated that the abuse took place when [Complainant] was eight or nine.[6]   [Record references omitted.]

As we have noted, the State may argue reasonable deductions from the record. *Lumsden*, 564 S.W.3d at 900. We agree that the State was arguing what it contended

---

[6]We set forth the verbatim exchange in the recording of the one-party-consent call, though we note that the parties talked over each other at various points during the conversation:

[Mother:] And she would just put this in her diary and make it up for no reason. Not tell anybody. Nothing. It's just some fantasy written in her head.

[Appellant:] I don't know. Why did she tell [someone] she was gonna run away from home? Why did she ask me how she could live her own?

[Mother:] Because kids are little. Because she got mad at momma.

[Appellant:] Why did she ask me if she could make out with my son . . . ? I don't know why kids do what they do.

[Mother:] She did never [sic] said that. She was eight years old.

[Appellant:] Ok, she was eight, nine years old.

[Mother:] She was a child.

[Appellant:] *So that's whenever she wrote all that crap I guess.*  [Emphasis added.]

21

was a reasonable deduction from the evidence and that the trial court did not err by overruling the objection.

### D. The State's argument did not constitute a due-process violation.

Appellant argues that the State's closing arguments were so improper that he was deprived of a fair trial. The predicate to that argument is that the State's closing arguments were improper. We have concluded that they were not. Thus, the predicate for Appellant's due-process complaint does not exist.

We overrule Appellant's sole issue.

## IV. Conclusion

Having held that Appellant has failed to preserve error on the primary complaints that he raises, that the State did not improperly comment on Appellant's failure to testify or misstate the evidence in its closing argument, and that no due-process violation occurred, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 23, 2023